Woods, Circuit Judge,
(after making the foregoing statement.) In conformity with the ruling of the supreme court in the case of Corn Planter Patent, 23 Wall. 181, 218, it was right, we think, to construe the claims of the patent in question as embracing the devices shown in the specifications, each claim being regarded as including such devices *222 and combination as are necessary to meet the requirements of the general terms in which it is expressed. When the claims are so construed, it maybe said of each of them, in the language of that case: “The claim thus limited is considerably narrowed in its operation. It is substantially for a combination of the material parts of the entire machine, and no one can be said to infringe it who does not use the entire combination.” This, of course, does not exclude the doctrine of equivalents, •of which Church was careful in explicit terms to reserve the benefit. How far, when properly construed, the several claims may be distinguished from each other, the court below did not indicate, and we do not deem it necessary now to consider. It may be that there is no essential difference, since the reference in all is to the same devices as arranged in a single combination.
The devices and combination described in the reissued letters are not different from those of the original patent, and as the corresponding •claims of both must be regarded as limited by the devices, we do not perceive that in any of the reissued claims there appears or is asserted an invention different from or which is expanded beyond what was originally claimed. There is therefore no reason for pronouncing the reissue invalid.
In respect to Church’s invention and its advantages, the court below declared its “distinctive characteristic” to be “that the winding and hands-setting engagements are not effected by the direct force of the push and pull upon the stem arbor;” “that Church seems to have been the first in the art to obtain the winding and setting engagements by means of springs, which were brought into action by the inward and •outward movements of the stem arbor, thereby avoiding the liability to injure the wheels;” that, while Church did not invent the short stem .arbor, with its latch or lock, “he has adjusted and attached [adapted] what he did invent to be used with such stem arbor, and * * * has the right to claim that his winding and hands-setting train has no positive connection with the stem arbor, as he has by means of his sliding block, N, within the movement, secured all the results which would be accomplished by a longer stem arbor.”
After a careful examination of the patents exhibited in proof of the prior art, and especially in view of the Woerd patent, which, it is conceded, differs but little, mechanically, from the Church, we are notable to see that in the broad sense stated Church was the first to obtain the winding and setting engagements by means of springs, or so as to avoid liability of injury to the wheels. In the Woerd watch the winding or normal engagement is effected by the operation of a spring, e, and the same spring is in some measure effective, manifestly, to prevent injury to the wheels when the opposite engagement is accomplished, as it must be, by an outward pull of the stem arbor, whereby the lever, T, is pressed upon the arm,/, of the plate, b, pushing it inwardly, and swinging the yoke, V, so as to effect the setting engagement. As it is here used, the spring plays an important part in respect to both engagements, being the active force that produces one, and a resisting force which tends to *223 prevent undue and sudden violence to the injury of the wheels in the production of the other. Besides, there being one spring in the device, whereby one of the engagements is effected, with all the advantages of that mode of operation, it requires no invention to introduce into that device another spring to subserve the same ends in respect to the other engagement.' Such a spring might be located at some point between the end of the lever, T, and the yoke, V, in connection with, or perhaps without, some of the parts shown; but, what is simpler still, the lever itself might be so reduced in thickness as to become a spring, more or less strong, but not so strong but that with the resisting force of the spring, e, the meshing of the hand-setting wheels would occur without shock or injury. Turning to Hoyt’s patent No. 206; 674, we find two springs in use for effecting the respective engagements, one of which acts automatically, and the other under the pressure of a lever. There is, therefore, as it seems to us, no element of invention in the mere introduction of springs into the Church device, nor was any new use or new kind of advantage in watch construction obtained thereby.
Church’s invention, however, has superiority over Woerd’s, Hoyt’s, Carnahan’s, or any other which has come under our notice, resulting, not from any particular part or element of the device, but rather from the combination and arrangement of the parts as a whole. That combination is new and useful, and its peculiar usefulness consists, as we think, not so much in the springs and consequent protection of the wheels, as in the fact that the declared object of the invention, namely, “ to render watch movements and cases readily interchangeable,” is better accomplished than by any preceding construction. By transferring Carnahan’s lever from the works to the case, Woerd achieved a short stem arbor, and made the movements and cases interchangeable; but, to say nothing of other differences, the placing of the lever, which is one of the movement devices, in the case, is a marked disadvantage, since it requires a special form of case, and that, too, of awkward and unmechanical arrangement. One of the features of the Church patent, expressly mentioned in all the claims but the first, and implied, perhaps, in that, is that the winding and setting train is normally in engagement with the dial wheel; and it is to be observed that in the patents of Woerd, Carnahan, and others, which show the closest approximation in construction to Church’s device, the normal engagement is with the winding wheel. It is, of course, easy, and does not involve invention, to change such engagements, if nothing more than the change is sought, and in some of the designs in evidence normal setting engagements are found, but they are in lever-set watches, of which the Wheeler is an example, and which, as the evidence shows, may readily be constructed with the normal engagement in one wheel or the other; but in stem-winding and stem-setting watches it is not so, and as an element in the combination shown in Church’s claims the normal hands-setting engagement plays an important and indispensable part.
In respect to the question of infringement, a number of propositions are pressed upon our consideration. In the comparison made of the two devices by the court below it is asserted or assumed that of the two *224 springs in each the stronger produces the setting engagement, and resulting similarities of construction and operation are pointed out. • It is now insisted that Church’s patent does not show or describe a weaker and a stronger spring; that there is only one spring'in his device; and that the restraining of the action of a stronger spring, and thereby allowing the weaker one only to act without restraint, are shown in the Hoyt and Wheeler patents, which both belong to the appellant, and are older than the appellees’ patent. In this respect the court fell into verbal inaccuracy, but not, we think, into material error. There are certainly two springs in Church’s device, which are brought into action in producing the respective engagements. They are described as springs, and designated “K” and “in;” K, when unrestrained, effecting the setting engagement, and the other, when brought into action, as it must be, by the inward thrust of the stem arbor, effecting the winding 'engagement. They were not improperly called “opposing springs,” because K resists the movement of the stem arbor, which brings in into operation. But, on the other hand, in does not resist the counter action of K when the stem arbor is drawn out. Whether or not one of these springs is stronger than the other is not stated, and need not be considered, because the normal operation of El is not resisted by the other spring. In the defendant’s watch, it is true, the two springs are in constant and direct opposition, and consequently the one producing normal engagement is and must be the stronger. It would therefore be more accurate, instead of the corresponding expressions in the’opinion quoted, to say that in “both watches the spring producing the setting engagement is not controlled in its action by the other spring, and, when otherwise unrestrained, puts the train into that engagement; ” and that “ in each watch the winding engagement is effected by restraining the action of one spring and allowing or causing the other alone to act; the spring so restrained in both watches being held out of action by force of the stem arbor, locked at its innermost position.”
There is, as stated, a plain difference in the operation of the two springs which effect the winding engagements in the respective devices. In Church’s watch that spring is forced into operation by the pressure of the stem arbor on an arm of the rock shaft of which the spring itself is another arm, while in the defendant’s watch the corresponding spring is automatic, effecting the engagement by its own force whenever the opposing strength of the other spring is overcome by the pressure of the stem arbor. Is this an essential difference in construction or operation? We think not. Starting with the Church device, it requires only ordinary skill, and certainly not invention, to effect the change. It is necessary only to sever the spring, i3, from the rock shaft, and attach it to the plate, A, in such position as that it shall constantly press on the same end of the yoke, E, as now, in order to produce a complete correspondence between the two devices in respect to the location, character, and operation of their springs. This simple mechanical change, requiring no other alteration whatever in the Church device to make it operative, would entirely eliminate the differences, whether of construction or operation, mentioned in appellant’s 2d, 3d, 4th, 5th, and 7th proposi *225 tions; and with that alteration there would remain of the mechanism between the stem arbor and the winding and hands-setting train in the Church construction a three-pronged rock shaft, which, for all its functions, finds a full equivalent in the defendant’s slide bar, i, with its projecting arm and pin, as they are shown in the Sheridan patent, under which the defendant’s watch is made. Another projection or end, as it is called, of that slide bar, is a plain substitute for the movable block, N, of the Church combination. Instead of the three-wheeled yoke of Church, the defendant employs.a yoke with two wheels, one of which meshes with either the winding or setting wheels as the yoke oscillates. It is cne of “the well-known forms of intermediate mechanism,” which Church said might be substituted for the mechanism shown in his patent.
But the first and chief difference insisted upon is that the normal engagement of appellant’s shifting train is with the winding wheels, and not with the dial wheels, as in Church’s patent. There is only a semblance of truth in this. In the defendant’s stem-setting and stem-winding watch the normal engagement is really with the dial wheels. The assertion to' the contrary is specious. It is based on the fact that in the Sheridan patent there is introduced a setting lever, ll, so arranged that it may be put in engagement with the end of the spring, l, which is thereby placed under tension, and by reason of its greater strength overcomes the opposing spring, and produces the setting engagement; but when the lever, l, is thrown out of engagement, the spring, l, swings freely upon its pivot,' without tension, and leaves the opposing spring to produce the winding engagement, which is described as normal. But when the device is placed in a stem-winding and stem-setting case, the lever, l1, cannot be shifted, but is kept unchangeably in engagement with the spring, l, holding it firmly in the position of tension, and causing it to act exactly as does the spring, K, in Church’s watch. Whatever, therefore, may be the uses and effect of that lever in other forms of construction, in a stem-winding and stem-setting watch it serves no purpose except to fix the spring in the position of tension, and that spring, when left to act as freely as it can act in that position, produces the stem-setting engagement. In that form of construction, therefore, that is the normal engagement, and the two devices are not different in that respect.
The necessary conclusion is that the appellant’s watch, though made in conformity with the Sheridan patent, is modeled after the device of Church, and contains substantially the same combination of parts or well-known equivalents, arranged to accomplish the same result by the same mode of operation. „
The decree of the circuit court is therefore affirmed.