## H. D. HUDSON MFG. CO. v. STANDARD OIL CO. (INDIANA).

### No. 9455.

Circuit Court of Appeals, Eighth Circuit.

Aug. 1, 1932.

A. C. Paul, of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis, Minn., on the brief), for appellant.

William M. Swan, of Detroit, Mich. (Swan & Frye, of Detroit, Mich., and Russell Wiles, L. L. Stephens, and George A. Chritton, all of Chicago, Ill., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

The appellant and appellee were respectively the plaintiff and defendant in the lower court, and will be so referred to here. The plaintiff has for a number of years manufactured and sold liquid insecticide sprayers. It is the owner of letters patent No. 1,639,294, application for which was filed by Herbert D. Hudson in 1925, and which were issued August 16, 1927. The patent relates to hand-operated sprayers of the cylinder and piston type, adapted for spraying fly-destroying solutions, disinfectants, germicides, etc. Sprayers similar to that described in the patent were at one time purchased by the defendant from the plaintiff in large quantities. Subsequently the defendant procured sprayers substantially identical from another manufacturer, which materially affected the business of the plaintiff, and the plaintiff brought suit for infringement. The court

below found that, if the patent was valid, it was infringed by the defendant, but held that it was invalid for lack of invention.

With respect to its patent, the plaintiff says: "What Hudson did was to make a new combination of old elements, thereby creating a simpler, more compact, more attractive, and more efficient sprayer for house use, and one that does not have the objection of allowing the oily insecticide to seep out of the container or fall back from the siphon tube when the device is in use, and soil furniture or carpets, or make grease spots on any object on which it may be laid."

Hudson came into an old and a crowded art. His specifications clearly show that what he felt he had accomplished primarily was to provide a drip cup for a sprayer which would prevent the liquid from running over the exterior of the sprayer while at rest or in use, and would serve to re-enforce the connection between the cylinder and the supply tank.

The applicant had great difficulty in securing the allowance of any claims by the Patent Office. Three times all of his claims were rejected and their rejection acquiesced in. Finally, after he had procured the services of associate counsel at Washington and apparently as the result of personal interviews between the Examiner and the plaintiff's counsel, two claims were allowed, which read as follows:

"1. A sprayer comprising a pump having a piston and cylinder, the cylinder having a head with an orifice therein, a tank having a seat formed in its wall to receive a portion of substantial arcuate extent of the lower side only of the pump cylinder, the under side only of the forward end of the pump cylinder being fitted into the seat and soldered thereto, a drip cup fitting against the side of the tank and the lower half of the cylinder head and fastened to both the tank and cylinder head, and a tube extending from the opening in the cylinder head down, through the side of the tank and to a point near the bottom of the tank.

"2. A sprayer comprising a pump piston and cylinder having a head with an orifice therein, a tank soldered in a line along the side of the cylinder, a tube extending from near the bottom of the tank with its upper end terminating just below the orifice in the cylinder head and a drip cup formed of a single sheet of metal bent around the upper end of the tube and having its lower edge soldered along the side of the tank and its side edges along the head of the cylinder."

In view of the rejection by the Patent Office of former claims which are, in large part, included in the claims finally allowed, it may well be doubted whether Hudson was allowed anything more than a claim on his method of connecting the pump cylinder to the supply tank, but we think it is not necessary, in view of the prior art, to discuss that question.

■ Assuming that the plaintiff's device is a true combination, rather than a mere aggregation of old elements each of which performs an old function in an old way, we think that the combination, except as to structural detail, is fully covered by the patent to Rath No. 958,536, which was granted in May, 1910.

Rath shows a pump with piston and cylinder, the cylinder having an orifice therein; he shows a supply tank fastened to the lower side of the pump cylinder, the under side only of the forward end of the pump cylinder being fitted into the seat for the tank; he shows a tube extending from the orifice in the head of the cylinder through the top of the tank and to a point near the bottom of the tank; he shows a drip cup which is fastened to both the tank and the cylinder head. His construction may not be as substantial nor as practical as that of the plaintiff; he does not solder the pump cylinder into a seat in the wall of his tank formed to receive a portion of substantial arcuate extent of the lower side only of the pump cylinder; but, so far as invention is concerned, he shows everything necessary to produce the same result which is produced by Hudson's device, and in the same way. To remove Rath's supply tank and substitute the method of attaching the tank to the pump shown by Hudson would hardly require inventive genius, in view of the fact that this method of attachment of a cylinder to a tank was old in the art. It is shown in the patent to Barber No. 892,703, issued in 1908, for an atomizer and powder distributer, and in patent to Brown No. 1,359,485, issued in 1920, for a sprayer. There is other evidence in the record that this method of attachment was old, and that sprayers substantially similar to the plaintiff's, both with and without drip cups, had been for sale and in use long prior to the time when Hudson applied for his patent.

We are convinced, however, that it is not necessary to go any further than the prior art patents referred to to reach the conclusion that Hudson's combination involved nothing more than mere mechanical skill. His structural improvements over Rath are pointed out by the prior art, and possess no origi-

nality. Every element of the Rath sprayer finds its equivalent in the Hudson sprayer.

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Union Paper Bag Machine Company v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

In McDonough v. Johnson-Wentworth Co., 30 F.(2d) 375, 384, this court said relative to devices differing greatly in structural detail: "The functions of these several means are the same in the disclosed devices of plaintiff and in the devices of defendant. These functions are also performed in substantially the same way. The tests of mechanical equivalents are therefore fulfilled."

And also: "Many of the differences, however, relate to form or detail, rather than to function or principle. As to such changes this court, in National Hollow B. B. Co. v. Interchangeable B. B. Co., supra, has said (page 711 of 106 F.): 'Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. (Columbus) Watch Co. v. Robbins, 64 F. 384, 396, 12 C. C. A. 174, 187, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 F. 859.'"

Even if the Rath device was crude and imperfect in construction, it obviously was operable, and its crudeness and imperfections in form and structure would not render valid a subsequent patent for a device embodying the same generic principle. See McDonough v. Johnson-Wentworth Co., supra, quoting the following language from Hildreth v. Mastoras, 257 U. S. 27, 34, 42 S. Ct. 20, 66 L. Ed. 112: "The machine patented may be imperfect in its operation; but if it embodies the generic principle, and works, that is, if it actually and mechanically performs, though only in a crude way, the important function by which it makes the substantial change claimed for it in the art, it is enough." See, also, Mergenthaler Linotype Co. v. Press Pub. Co. (C. C.) 57 F. 502, 505.

In Brinkerhoff v. Aloe, 146 U. S. 515, 516, 13 S. Ct. 221, 224, 36 L. Ed. 1068, it was said: "If several old devices are so put together as to produce even a better machine or instrument than was formerly in use, but each of the old devices does what it had formerly done in the instrument or machine from which it was borrowed, and in the old way, without uniting with other old devices to perform any joint function, it seems that the combination is not patentable. Hailes v. Van Wormer, supra [20 Wall. 353, 22 L. Ed. 241]; Reckendorfer v. Faber, 92 U. S. 347 [23 L. Ed. 719]."

In Reckendorfer v. Faber, 92 U. S. 347, 356, 23 L. Ed. 719, the court said: "Mechanical skill is one thing; invention is a different thing. Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable. The distinction between mechanical skill, with its conveniences and advantages and inventive genius, is recognized in all the cases." See, also, Tropic-Aire, Inc., v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580.

It is contended that the Hudson sprayer is adapted to the spraying of modern insecticides with a petroleum base, in the home, while the Rath sprayer was a garden sprayer; that it is desirable that a modern insecticide sprayer shall produce a fog or mist, and shall be held with the nozzle pointed upward, while a garden sprayer produces a sort of rain, and the nozzle is ordinarily pointed downward. The kind of a spray which any sprayer or atomizer produces is governed by principles and means which have been for years thoroughly understood by those skilled in the art, and a sprayer which will produce a rain in the garden can, with a few adjustments well within the range of mechanical skill, be made to produce a fog or mist in the house.

It is not invention to produce a device which a skilled mechanic would produce when required to effectuate a given result. Lyman Mfg. Co. v. Bassick Mfg. Co. (C. C. A.) 18 F.(2d) 29, 34; Galvin Electric Mfg. Co. v. Emerson Electric Mfg. Co. (C. C. A.) 19 F.(2d) 885; Tropic-Aire, Inc., v. Sears, Roebuck & Co., supra.

In Mallon v. Gregg & Co., 137 F. 68, 76, 77, this court said: "The application of an old device to a new use is not in itself an invention or capable of protection by a patent. A prior patentee who has plainly described and claimed his machine or combination has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether he was aware of all these uses or methods of use when he claimed and secured his monopoly, or not."

380

■■ The commercial success of an invention, the patent monopoly on which has expired, cannot, of course, revive that monopoly or give to one who secures from the Patent Office a patent for the same invention a new monopoly. The plaintiff does not claim that commercial success does have that effect, but it is claimed that there is sufficient doubt as to whether what Hudson did amounted to invention to justify recourse to the evidence of its commercial success to tip the scales in the plaintiff's favor. The state of the prior art, in our judgment, precludes us from giving any consideration to the question of plaintiff's success in marketing its device.

The decree is affirmed.