**B & W SHOE MACHINERY CO. et al. v. MULTIPLE BORING MACH. CO. et al.** *

**No. 9034.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 8, 1934.

*Rehearing denied Dec. 11, 1934.

John H. Bruninga, of St. Louis, Mo., for appellants.

Edwin E. Huffman, of St. Louis, Mo., for appellees.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge.

This suit involves the validity and alleged infringement of two patents by Brauer and Wagner which they assigned to B & W Shoe Machinery Company. The patents are numbered 1,852,288 and 1,886,157. The first was applied for June 22, 1928, and issued April 5, 1932. The second was applied for February 10, 1930, and issued November 2, 1932.

The patentees and their assignee brought this action charging the defendants with the infringement of these patents and asking for an injunction and for an accounting. The patents are for a process and apparatus for forming the heel-end of the sole. The defendants pleaded noninfringement and invalidity of the patents involved, for lack of novelty. The learned trial judge held the two patents invalid, both as to process and machine claims for want of patentable invention, and dismissed the petition. This appeal seeks a reversal of that holding.

The patents relate to the shoemaking art, particularly the part of it that pertains to the proper shaping of the heel-end of the outer sole for the reception of the wooden heel. The two devices of plaintiffs' patents as well as the accused device of defendants are exhibits before this court. They are designed to trim or shape the heel-end of the sole for the reception of the shoe heel. The shape of the piece trimmed off the heel-end of the sole by the accused device is practically the same as that trimmed off by the device of plaintiffs' second patent, leaving the heel-end of the sole a U-shaped tongue which fits into the cupped bottom of a wooden heel and forms its seat.

The preparation of the heel-end of the outer sole for the reception of the shoe heel has for ages been performed by the shoemaker's knife in the hands of a skilled operator. On account of the extra expense and time required to perform the operation by hand, the effort to perform it by machinery has been the subject-matter of many patents. Plaintiffs claim to have solved this problem by the

machine of their patents, while the defendants say there is nothing new or novel in either plaintiffs' process or machine over the prior art. The court below sustained the defendants' contention and did not for that reason enter into the question of infringement. Was this holding correct?

The mechanism of plaintiffs'. first patent consists of a lower die or backing support in pairs, with cutting edges extending inwardly, mounted on two posts, one of which is slidable and has a handle to slip the dies into the crease between the sole and the upper in the zone back of the breast line, previously marked by hand with a pencil after placing the heel on the sole. The shoe is slipped over these backing supports or dies, which are thinned or beveled down, particularly at the front, and take into the crease between the outer sole and the upper. Mounted above these supports is a pair of cutters or dies, with the cutting edges shaped to conform to the breast line desired. These cutters are rammed down and by co-operation with the cutting edges or supports cut through the sole margin at the end of the breast line. The handle above mentioned also adapts the machine for various sized shoes.

This device in reality consists of a male and female die so shaped as to make it pinch out a small marginal portion of the sole at the breast line and backward while the sole is attached to the shoe at the heel end, which has previously been preliminarily prepared, either by hand or machine for the reception of the shoe heel. The machine of the first patent did not cut the sole back and around the end. The device of the second patent accomplished this last purpose by extending its supports and cutters back and around the end of the sole, removing the necessity for preliminary work and leaving the U-shaped heel-end of the sole ready for the reception of the shoe heel itself. The operation is performed by both machines while the sole is attached at the heel end to the upper. While this feature was urged as the main reason for granting the patents, as shown by the patent office records, it is now abandoned, perhaps because the accused machine operates with the heel-end of the sole unattached to the shoe up to the breast line.

In manufacturing shoes, outsoles are attached to the upper by cement or stitches. Then the operator places the wooden heel in position and marks a line across the outsole immediately in front of the heel, called the breast line. The sole is then prepared, either by hand or machine, for the reception of the heel. It is highly desirable that this be done with as little breaking of the cement or stitches as possible forward of the breast line.

Prior to the Brauer and Wagner patents many machines involving the use of various forms of the well-known dinking dies were used to perform this process. A plate, forming the bottom of the dinking die, was placed between the sole and upper and in co-operation with the top die or cutter the heel-end of the sole was cut for the reception of the shoe heel. This plate necessarily caused a breaking of the cement or stitches forward of the breast line, which is objectionable. To remove this objection plaintiffs devised their machines, with thin or beveled edges on the female part of their die so that it can enter the crease between the sole and the upper with practically no tearing up forward of the breast line. This, they say, solved the difficulty of the earlier devices and gave validity to their patents. They now rely solely upon the thinness of the edges of the lower die or support of their device for novelty.

This case then narrows itself to the one issue of whether in the preparation of the heel-end of the sole for the heel, the use of the female die by plaintiffs, with thinner edges than the lower plate of a dinking die used in prior machines, constitutes patentable novelty over the prior art. Numerous other patented machines for shaping heel-ends of soles for heels were introduced in evidence, but those of Angel, Taylor, Brauer, and Pericaud most nearly approximate plaintiffs' device and process. Slight differences in mechanical operation are perceived in these machines, but the process and function performed are similar. These machines used dinking dies. The Brauer patent, which is typical of the others, performed the operation or function of plaintiffs' machine by inserting a plate or lower member of the dinking die between the upper and outer sole. A U-shaped cutting die in co-operation therewith marginally recessed the sole at the breast line and a suitable distance around the heel with one incision.

A careful comparison of the Brauer and Wagner patents with these prior patents shows that the only difference was to substitute for the dinking die a male and female die; the lower member having its inner or cutting edges beveled or thinned to a degree permitting its insertion in the crease between the upper and outsole up to the breast line, and thus supporting the sole for cutting at that point without tearing up the stitches or cement forward thereof.

The question at issue then is reduced to the narrow compass of determining whether the thinning of plaintiffs' lower die constitutes patentable improvement over the prior art, for no invention can be based upon the species of die used; nor is such a contention made here. This difficulty to be removed was the tearing up of the cement or stitches forward of the breast line where the cut had to be made. Any mechanic skilled in the art would know that the thinner the support the less the disturbance beyond the position where it must be placed. This being true, changing the size and dimension of dies was a matter of mechanics and did not constitute patentable novelty. Hudson Manufacturing Co. v. Standard Oil Co. (C. C. A.) 60 F.(2d) 377; Donner v. Sheer Pharmacal Corporation (C. C. A.) 64 F.(2d) 217.

We therefore agree with the court below in holding that both the process and machine claims of plaintiffs' first patent are invalid because anticipated by the prior art, and that the second patent adds nothing to the first and is likewise invalid.

The case is affirmed.