### DAVIS MFG. CO. v. LEVIN BROS.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1925.)

No. 7013.

Patents ⚖=328—No. 1,381,172 for davenport bed held valid and infringed.

Patent No. 1,381,172 for davenport bed *held* valid and infringed.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit by the Davis Manufacturing Company against Levin Bros., a corporation. Decree for defendant, and plaintiff appeals. Reversed and remanded, with directions.

A. C. Paul, of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis Minn., on the brief), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and AMIDON, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellant, a Minnesota corporation, is the owner of letters patent numbered 1,381,172, issued January 14, 1921. The subject of the patent is a davenport bed. The particular object of the invention is "to provide cushions for the davenport which, during the daytime or before the bed is made up, will have all the appearance of loose movable

cushions, but when the extension is drawn out they may be tilted over upon it and co-operate with the seat cushion of the davenport to form a bed."

Appellant's structure by day has the appearance of an ordinary davenport sofa, upon the seat of which apparently are superimposed three cushions. At night, a bed extension, or attachment, is drawn out from below upon which the pseudo top cushions are tilted over, forming, together with the seat cushions proper, the mattress upon which the bed clothing is placed. These three top cushions form what is called in the patent a "cushion section." All are attached, a little back from the front, to the seat cushion by a flexible fabric which acts as a hinge and forms the entire top surface of the seat cushion and likewise the upper surface of the top cushions when the latter are tilted over upon the extension frame for the purpose of forming a bed. These so-called top cushions are not attached to each other, nor at the sides and back of the davenport frame, and can be turned over individually upon the bed extension frame; but, inasmuch as all are attached by the same fabric toward the front of the seat cushion, they cannot be removed from the davenport at any time. This method of attachment, a little back from the front edge of the davenport, is designed, as the specifications say, "to present to a person standing in front of the davenport the appearance of loose, readily removable cushions, a gap being (thus) provided between the forward edge of the seat cushion and the movable cushions, so that a casual observer would readily assume that the upper cushions were independent and removable instead of being attached to the seat cushion."

Appellee's structure in all essential features is identical with that of appellant. The davenport, by day, to the casual observer, presents the same appearance of three apparently movable cushions placed upon a davenport seat, with a gap at the front edge creating the illusion of removability. The three top cushions, while distinct, are joined along the entire bottom surface instead of at the front merely. They are separated at their sides, however, and present the same appearance to the casual observer standing at the front of the davenport. This distinction between the structures in nowise involves the principle of the invention, which will be discussed later, and could be detected only by attempting to remove the cushions; in which case the true nature of both structures would be disclosed.

The trial court sustained the patent in suit, but was of opinion that the invention was of a nature so narrow that it should be limited to the specific structure above first described and preferred in the drawings and specifications. Because of the difference above stated, and some others of an incidental nature, and entirely disconnected with the principle of the invention, that court held that the patent was not infringed. These other incidental differences in construction, to which reference has just been made, are these:

In appellee's structure the bed extension frame may be detached to form an independent bed; and in such case, the flexible apron element by which the top cushions are attached to the davenport proper may be released. That apron in appellee's structure is attached to the frame of the davenport at the back and partly along the sides by a detachable device. With this use of appellee's structure and these differences incidental to that use, we are not concerned, because this detachable feature forms no part of the invention claimed in appellant's patent.

It is conceded by counsel for appellant that no part of the combination presented, standing alone, is new. He agrees that this is a crowded art, and that the flexible connection functioning as a hinge is not new in this art, nor generally, and, of course, that is the primary mechanical element in this combination, upon which, with its resulting utility, the patentability of the entire device depends. If we were to stop here, certainly the substitution of a flexible connection of fabric for a metal hinge would fall rather under the head of mechanical ingenuity than of patentable invention; but another consideration, and that not unimportant, enters into the conception of the patentee. This product is to serve a dual purpose—a sofa or davenport by day, and a bed by night. This idea, of course, was not new, but there ran with it the desire and the continuous effort to make this piece of furniture more presentable by day without the obvious intrusion of its utility at night. Such a result would, of course, make it far more useful to the purchaser and would increase its salability. A hinge, or other mechanical device, readily disclosing its true nature, would greatly detract from its appearance; therefore the substitution of the fabric would of itself add efficiency in the sense just stated, but this was not enough. If the maker could go further and create the added illusion of cushions placed upon the permanent seat, so that the "casual observer" in the room, as the patentee says, would

readily assume that these cushions were independent and removable, instead of being attached to the seat cushions, a further disguise would be accomplished and a more artistic piece of furniture would be created; to this end the attachment was to be made a little back from the front so that the edges of the permanent seat and of the cushion section would not be drawn together, and that there might be a gap or space between them. Thus the extension cushions would have the appearance of being loose and separable; this, added to the exclusion of the metal hinge or other similar device in combination, was the feature of novelty upon which this patent was granted. In view, therefore, of the artistic effect obtained, the resulting desirability and salability achieved, the commercial value added, and the presumption attending the issue of the patent, we concur in the judgment of the trial court that the patent should be sustained.

Turning now to the remaining question, we are unable, after careful consideration, to perceive how the structure of appellee can escape the charge of infringement. Before resorting to comparison, it may be well to recall and restate some established principles in the law of patents.

The Supreme Court, in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122, pointed out that its previous decisions are not to be construed as holding that only pioneer patents are entitled to invoke the doctrine of equivalents, but that the range of equivalents depends upon the decree of invention, and that infringement of a patent not primary is therefore not averted merely because defendant's structure may be differentiated.

In National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 F. 693, 45 C. C. A. 544, this court held that a patentee is protected against those who use the very device or improvement described and claimed, or colorable evasions thereof. Further that: .

"Mere changes of the form of a device, or of some of the mechanical elements of a combination secured by patent, will not avoid infringement, where the principle of the patented invention is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. * * *

"A reference in a claim of a patent to a letter or figure used on the drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that device or element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed. * * *

"One who appropriates a new and useful patented combination cannot escape infringement by the use of common mechanical devices to unite or operate its elements which differ from those which are pointed out for the purpose, but which are not claimed in the patent."

Conceding then, as we must, that the doctrine of equivalent applies in some degree to patents not pioneer, we further held in Anderson v. Collins, 122 F. 451, 58 C. C. A. 669, that:

"The use of a different, but mechanically equivalent, method or material to construct some of the elements of a patented combination will not avoid infringement where the principle or mode of operation is adopted, and the elements, when constructed, perform the same functions by the same means as, or by mechanically equivalent means to, those described in the patent."

And, again, in Disc Grader & Plow Co. v. Austin-Western Road Machinery Co., 254 F. 430, 166 C. C. A. 62, we held that:

"Where the principle and mode of operation of a patented combination are appropriated, mere changes of the form or position of the mechanical elements thereof, or the substitution of plain mechanical equivalents for some of the elements of the combination, will not deprive the device of infringement in cases in which the forms and positions changed and the specific elements rather than the equivalents substituted for them were not claimed by the patentee to be, and were not, essential and distinguishing characteristics of the invention."

In Davis Sewing Machine Co. v. New Departure Mfg. Co. (C. C. A. 6th Circuit), 217 F. 775, 133 C. C. A. 505, this language appears:

"In determining whether the ambiguous terms of a claim should be confined more or less closely to the form shown in the drawings, it is usually well to compare with other claims which may not be in suit; and, if other claims are found which call for the specific construction of a part mentioned more generally in the claims in suit, that will be persuasive for not giving the limited construction to the general terms."

Let us see then what the patentee sought particularly to accomplish as the outstanding feature of his invention as disclosed by his specifications and claims. He says:

"A further and particular object of the

invention is to provide cushions for the davenport which during the daytime or before the bed is made up will have all the appearance of loose movable cushions, but when the extension is drawn out they may be tilted over upon it and co-operate with the seat cushion of the davenport to form a bed.

"To provide a mattress for the bed extension, a series of cushions, preferably three in number, are placed on the seat cushion of the davenport proper, and the fabric forming the top of the davenport cushion also forms the bottom of the extension cushions.

"In Figs. 1 and 2 we have shown the preferred arrangement of the extension cushions connected with the seat cushion of the davenport in such a way as to present to a person standing in front of the davenport the appearance of loose, readily removable cushions, a gap being provided between the forward edge of the seat cushion and the movable cushions, so that a casual observer would readily assume that the upper cushions were independent and removable instead of being attached to the seat cushion."

On page two of the patent, the term "extension cushion" instead of "cushions" is used, and in claim 1 the extension cushions, which are to have the appearance of loose movable cushions, are referred to as the "cushion section." So, also, in claim 2 "cushion section" is used and likewise the term "cushions foldable section." In claim 3 we find the terms "an extension cushion" and "extension cushion" used. Throughout the patent, and particularly in claims 3 and 6, emphasis is placed upon the provision for gaps between the forward portions of the seat and extension cushions, and this is the only gap feature which is described in the patent as important and forming the part of the novelty attained. So, that, by reference to the various claims, and all are in suit, we find that really the top or extension cushions are considered as a section to be distinguished from the permanent seat cushions with an apparent gap to give them the appearance of movable cushions, the division into three being a preferred form of construction, but not essential to the principle of the invention. In no place is it pointed out or claimed that the ability to turn these cushions over, one at a time, upon the bed extension is an essential feaure of the invention.

Turning now to appellee's structure, it is apparent that it responds to the reading of the appellant's patent and claims. We

may disregard the twin bed feature and changes incidental thereto; they are not claimed by the appellant and have no connection with the invention proper. Whether the flexible cloth forming the hinge was attached at the back of the davenport upon the rail or other part of the structure is immaterial; also, whether it was permanently attached or removable by snaps is likewise of no moment. Those features of appellee's structure are important only in their relationship to the twin bed device, which, as we have said, is not here involved. It is likewise immaterial that in appellee's structure there is some attachment of the seat cushion at some part of the sides; that also is an element unimportant to the principle of appellant's invention, and, therefore, cannot be used to differentiate the structures. It cannot, of course, be claimed that because the flexible fabric in appellee's structure is in one piece instead of in three pieces, as in appellant's structure, avoids infringement. Stockland v. Russell Grader Mfg. Co. (C. C. A. 8th Circuit), 222 F. 906, 138 C. C. A. 386. And here, let it again be noted, that this feature of appellant's structure is merely a preferred mode of construction and neither insisted upon nor essential to the functioning of the patented device. The most that can be said of it is that it may be conceived to increase the appearance of independent and removable cushions, but this could hardly be the result to the casual observer standing in front of the davenport, as pointed out in the patent. It could only be disclosed by a closer inspection, which would reveal in both structures that the cushions are not, in fact, removable, because all are attached at some point.

In appellee's structure, as in appellant's, there is in appearance a series of three cushions; these cushions are separated at their sides from top to bottom. If one were to place his hand between them it would pass down along the entire side, thereby creating the impression of separate cushions. As a matter of fact, in each case the cushions are separate and distinct; that they are sewed to the flexible fabric in each case does not alter the fact that in construction they are made separately. No one making a close investigation could fail to discover that these cushions, in both cases, are so far attached as to prevent removal. The gap in front is present to the same extent in both cases, and it is only by attempting to remove the cushions and to bring them forward that the slight difference between the two structures would be disclosed; and, in

that event, the illusion would be dispelled in either case. The fact is that the appellee has made an almost identical copy of appellant's device, changing in slight and immaterial features unclaimed by appellant and in no sense altering the principle of the invention. Appellee has sought to discredit this invention, and reference to a number of patents in the prior art is made. None of them has done or sought to do the specific thing which appellant has accomplished.

"That prior patents separately disclosed one or more of the elements of a later patent, while no one of them disclosed them all, does not necessarily establish anticipation by any of them." Minneapolis, etc., Ry. Co. v. Barnett & Rec. Co. (C. C. A. 8th Circuit), 257 F. 302, 168 C. C. A. 386.

It is a familiar doctrine in the law of patents that, after an invention, an infringer may not piece together from a number of disconnected patents in the same or other arts a combination of features which would render the patented combination invalid; particularly when there is added a new and distinctive efficiency as the result of the combination made by the patentee as distinguished from combining a number of old elements, all functioning as before without that new and distinctive result.

The decree is reversed, and the case remanded to the court below, with instructions to grant the injunction prayed, and for such other proceedings as to that court may seem to be required by equity and good conscience in the premises.